BOUTALL, Judge.
Leo Valovich was charged by bill of information with two counts of pornography involving juveniles, LSA-R.S. 14:81.1. Following trial, Valovich was found guilty and sentenced to two years, six months at hard labor for each count, the sentences to run consecutively. Defendant appeals his conviction and sentence.
Appellant assigns several errors for our review:[1]
(1) The trial court erred in allowing John Kinzie of the New Orleans Police Department to testify on rebuttal concerning a prior offense when the defendant had not received the required Prieur notice, State v. Prieur, 277 So.2d 126 (La.1973).
(2) The trial court erred in holding a book seized from the defendant’s home was admissible when the book was not named in the warrant, was found beneath a couch, and was of no relevance to the offense charged.
(3) The trial eourt erred in sustaining the objections of the assistant district attorney and unduly limiting the scope of the defendant’s direct examination thereby denying the defendant the right to properly present his case and denying him due process of law.
(4) The trial court erred in denying defendant’s motion to suppress.
(5) The trial court erred in denying defendant’s timely motion for new trial.
FACTS
During May, 1983, defendant and his wife employed two 14 year-old neighborhood boys to perform various maintenance jobs around their house. The boys were also employed to assist in the preparation of advertising flyers for distribution in connection with the Valovichs’ printing business. On several occasions during the month the defendant offered the two boys sums of money to pose nude for photographs and to photograph him in the nude. *161 Defendant also suggested that the boys could earn money by being photographed while engaging in sexual intercourse with young girls he would provide. Initially, the boys did not take Valovich’s proposals seriously and continued to work at the Valo-vich home. However, as the propositions were repeated, the boys became unsure of Valovieh’s intent. During the latter part of the month Valovieh showed the boys books and magazines containing photographs of the type he stated he wished to obtain from them.
Following this incident, one of the boys told his mother about Valovich’s conduct. She in turn told her uncle, who contacted the Kenner Police Department. Valovieh was arrested for pornography involving juveniles.
ASSIGNMENT OF ERROR 1
Appellant first contends the trial court erred in allowing a police officer to testify on rebuttal concerning a prior offense when the State failed to give the required Prieur notice, State v. Prieur[2], 277 So.2d 126 (La.1973).
At trial, Valovieh took the stand and denied soliciting the two boys involved in the case, as well as any young boys. Tr. Vol. II, p. 195, p. 202. On rebuttal, the State called John Kinzie of the New Orleans Police Department, who testified he had arrested Valovieh on May 13, 1984, on an obscenity charge. Specifically, Kinzie testified when he walked into a men’s public bathroom on Decatur Street in New Orleans, he observed the defendant having oral sex with a teenager in a stall of the bathroom, and that when the defendant noticed Kinzie, he identified himself as a clergyman giving guidance and counseling to the younger boy. No objection was made by defense counsel during the entirety of Kinzie’s testimony.
La.C.Cr.P. Article 841 provides in pertinent part:
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and grounds therefor.
* * * * * *
It is clear to us that defendant cannot now raise this assignment of error when he failed to make a contemporaneous objection at trial. This court observed in State v. Cockerham, 442 So.2d 1257, 1260 (La.App. 5th Cir.1983):
The contemporaneous objection rule has two purposes: (1) to put the trial judge on notice of the alleged irregularity so that he may cure the problem, and (2) to prevent a defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by objections. State v. Thomas, 427 So.2d 428 (La.1982), [on rehearing].
While appellant argues he did not receive advance notice of Kinzie’s testimony, and further that Kinzie’s testimony was admitted over his objection, our review of the record reveals differently. It appears from a reading of the transcript on the argument of the motion for new trial that before Kinzie was called to the stand, both counsel had in-chambers conference with the presiding judge. In that conference, the State informed defense counsel that Kinzie would testify, and the subject matter of that testimony. Defense counsel objected only to the nature of the testimony. No objection was made regarding advance notice. Regardless of that, however, is the fact that defense counsel at trial failed to make any objection whatsoever during Kin-zie’s testimony. Moreover, it appears that the defense knew about this arrest; therefore defendant suffered no surprise.
We conclude that because defendant failed to make a contemporaneous objection *162 at trial regarding Kinzie’s testimony, defendant waived his right to raise the issue on appeal. See State v. Kelly, 456 So.2d 642 (La.App. 2d Cir.1984).
Additionally, we are of the opinion that had defendant objected timely, the testimony was admissible. Kinzie’s testimony was offered as direct rebuttal of defendant’s testimony that he had not solicited the instant two boys, or any young boys. LSA-R.S. 15:481 provides: “The State is permitted to introduce testimony of the bad character of the accused only in rebuttal of the evidence introduced by him to show good character.” Defendant’s testimony was his good moral character, and thus Kinzie’s testimony was proper rebuttal testimony.
Accordingly, assignment No. 1 lacks merit.
ASSIGNMENTS OF ERROR 2 AND 4
Appellant next contends the trial court erred in failing to suppress from evidence a book seized from his home pursuant to a search warrant. Because the issues are related, we will also consider assignment No. 4 herein, in which appellant contends the trial court erred by allowing this book to be introduced into evidence at trial.
Detective Mark Murret of the Kenner Police Department testified at the suppression hearing and at trial that he obtained a search warrant for defendant’s home based on the information provided him by the two boys. The boys had said that Valovich had shown them photographs of nude males engaged in sexual acts. These were kept in a blue trunk stored in his bedroom. The warrant specifically named a blue trunk trimmed in gold containing photographs of nude juveniles, and camera and movie equipment used to photograph nude juvenile males. While searching defendant’s home, Murret found a book of photographs, “Boys Will Be Boys,” under a sofa. Murret testified that while the book did not show any nude boys engaging in sexual acts, it did contain photographs of young boys with their genitalia exposed.
Defendant sought to suppress use of this book as evidence under La. C.Cr.P. Article 703. At the suppression hearing, it was the argument of counsel that as the book entitled “Boys Will Be Boys” was not described within the warrant application and not obviously contraband, it was unconstitutionally seized and should have been suppressed.
He relies on La.C.Cr.P. Article 162 which states:
A search warrant may issue only upon a probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
A search warrant shall particularly describe the person or place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search or seizure, [emphasis added]
The search warrant states that the evidence believed to be concealed in the residence was “one blue trunk trimmed in gold containing photographs of nude juveniles[,] camera and movie equipment [sic] used to photograph nude juvenile males.”
It is readily apparent that the book seized was not particularly described by the warrant. Nevertheless, its seizure was not necessarily precluded by its non-inclusion. La. C.Cr.P. Article 165 reads, “[w]hile in the course of executing a search warrant, a peace officer may make photographs, lift fingerprints, seize things whether or not described in the warrant that may constitute evidence tending to prove the commission of any offense, and perform all other acts pursuant to his duties.” [emphasis added] See also State v. Williams, 355 So.2d 1291 (La.1978).
In State v. Feeback, 414 So.2d 1229 (La.1982) the Supreme Court determined the appropriate standard to be utilized when considering whether an item not particularly described in a search warrant has been constitutionally seized. “Relevancy and admissibility at trial is not the test governing the seizure of things by an officer while executing a search warrant. Rather, *163 the standard is whether the items tend to prove the commission of any offense.” [emphasis added] Feeback supra at 1232.
It is established at the suppression hearing that Valovich had shown the two victims photographs of nude males engaged in sexual acts. Although the seized book did not contain photographs of any persons engaged in real or simulated sexual acts, the book contained numerous photographs of young boys with their genitalia exposed.
The officers executing the warrant were seeking evidence tending to establish a violation of La.R.S. 14:81.1 (pornography involving juveniles) which was, at the time of the offense defined as:
A. Pornography involving juveniles is:
1) the photographing, videotaping, filming, or otherwise reproducing of any act of sexual conduct or the obscene, lewd, or lascivious exhibition of the genitals or pubic area involving a child under the age of seventeen; or
2) the solicitation or coercion of any child under the age of seventeen for the purpose of photographing, videotaping, filming, or otherwise reproducing any act of sexual conduct or the obscene, lewd, or lascivious exhibition of the genitals or pubic area involving a child under the age of seventeen; or
3) the sale, distribution, or possession with intent to sell or distribute any photographs, films, videotapes, or other reproductions of any act of sexual conduct or the obscene, lewd, or lascivious exhibition of the genitals or pubic area involving a child under the age of seventeen.
B. Possession of three or more of the same photographs, films, videotapes, or other reproductions shall be prima facie evidence of intent to sell or distribute, [emphasis added]
Officer Murret testified at the suppression hearing during cross-examination:
Q. It wasn’t photographs [in the book] that you were suspecting that he [the defendant] may have taken of boys, is that correct?
A. They were reproductions.
Q. It was not a photograph that this defendant is accused of taking of anybody?
A. I don’t know if he took the actual photograph that was reproduced, but the photographs in the book were those—
Articulating his reasons for seizing the book Officer Murret stated “[t]he law empowers me to seize what I believe to be evidence of a certain crime. The book containing photographs of nude juveniles fit the category of evidence in this particular ease I was investigating, so it was seized.”
In Feeback, supra, the officers executing a search warrant for various drugs seized a number of innocuous non-contraband items from the defendant’s residence, including a briefcase, various papers, cigarette rolling papers, gloves, address books, a radio scanner, telephone answering device, tape recorder, defendant’s driver’s license, a teargas cannister, a slapper (billy club), and other miscellaneous items. On appeal the defendant contended that the trial judge erred in denying his Motion to Suppress on the ground that the items were not subject to seizure pursuant to the warrant. He argues, as does the present defendant, that the items were not contraband and therefore they were irrelevant to the prosecution.
After articulating the standard governing the seizure of items not designated by a search warrant the court continued:
In the instant case the items in question clearly tend to prove the commission of the charged offenses. Defendant had been seen with the briefcase and gloves when he sold methamphetamine and marijuana to an undercover narcotics officer. Moreover, the briefcase contained marijuana at the time it was seized. The other items tend to show defendant’s intent to distribute and/or his dominion and control over the drugs seized from his residence. They are also consistent with the type of things possessed by a drug dealer.
Feeback, supra at 1232.
The seizure of the book would appear authorized if it tended to prove the commis *164 sion of any offense. It appears from the Feeback, supra, decision that C.Cr.P. Article 165 is rather liberally construed to legitimate the seizure of items with only a minimal connexity to an offense. The aim and purpose of the search warrant was for the nude photographs, not primarily for the blue trunk. Although the book is not patently contraband, since the defendant was to be arrested for solicitation of juvenile boys for pornography it would appear that such a book containing nude and semi-nude photographs of young boys would have a logical nexus to the offense being investigated, would tend to corroborate the two boys’ allegations that they were shown illegal photographs, and would arguably corroborate the boys’ allegations that they were solicited by the defendant to be photographed while engaged in sexual conduct.
We conclude, therefore, that seizure of the book during the execution of a search warrant was permissible pursuant to C.Cr.P. Article 165 and the available jurisprudence, even though the book was not particularly described as an item subject to seizure.
The defendant argues also that the book was improperly admitted at trial, as it was irrelevant and highly prejudicial. Initially it is noted, that despite a minute entry to the contrary, the state did not offer the book entitled “Boys Will Be Boys” into evidence during the presentation of its case-in-chief. Rather, while the defendant was testifying in his own behalf, defense counsel elicited the following testimony:
Q. Did you have any books — photography books there?
A. Yes. -As a matter of fact, in my office, because of being involved with many people, speaking with many people, my shelves at times were lined with books on theater, Marriage Encounter, photograph, and particularly, the male body and the female body, nude photography.
Q. Did you have a book in which there were pictures — some of the pictures would’ve been pictures of nude boys?
A. Oh yes, yes. Taken by some of the best photographers from out the entire world.
Q. In that book, were all the photographs of nudes?
A. No. There were kids jumping in swimming holes, et cetera, and so forth.
Q. What was the purpose you had that book?
A. The study of photography. I want to get into making motion pictures on a religious basis eventually, and stills, of course, the study of stills.
Q. How long have you had that book?
A. About eighteen years.
Q. Was your wife aware of the book?
A. She may have come across it from time to time; she very rarely would go through all my books in my library because first of all, she is not a avid reader, as I am, nor is she avidly involved in the interest of photography or theater.
(Vol. 1, June 14, 1984, Tr. pp. 185-186)
On cross-examination the prosecutor asked:
Q. I show you what’s marked for identification as State’s Exhibit Number 1, ask if you can identify that book?
A. Yes. This is my book that was taken out of my home, from my library.
Q. This book belonged to you, is that right?
A. Yes sir.
Q. And these photographs in the book, about half of them depict boys in the nude, is that correct.
A. That’s most obvious, of course.
(Yol. 1, June 14, 1984, Tr. pp. 192-193)
Following the above exchange, the state moved to introduce the book as an exhibit. Defense counsel objected stating “I still— same objection I had previously.” The court overruled the objection noting that the book had been previously deemed admissible. No objection was lodged by the defense regarding any procedural irregularity, nor was any such issue presented for appellate review. The only objection *165 regarding the book which defense counsel had lodged previously was that the book had been improperly seized. As that objection had been decided following the motion to suppress and no new grounds for suppression had been argued or elicited, the trial judge overruled the defense objection at trial which was obviously based on the same grounds. On appeal the defense challenges that the admission of the evidence was prejudicial and that the book lacked sufficient probative value to outweigh its prejudicial effect.
La.C.Cr.P. article 841 states:
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefore.
The requirement of an objection shall not apply to the court’s ruling on any written motion. [Emphasis added].
The Supreme Court has stated that the defendant must state the basis for his objection when he makes it so that the trial judge has an opportunity to make the proper ruling and prevent or cure an error. State v. Thomas, 427 So.2d 428 (La.1982) [on rehearing]. The specific error which the trial judge is making must therefore be pointed out to the judge, and it is settled that a defendant is limited on appeal to the grounds for the objection articulated at trial. State v. West, 419 So.2d 868 (La.1982); State v. Provo, 396 So.2d 1298 (La.1981).
Accordingly, it would appear that any argument regarding the admissibility of the book beyond what was argued on the motion to suppress was not properly preserved for appellate review. We hold that Assignments of Error 2 and 4 lack merit.
ASSIGNMENT OF ERROR 3
Appellant contends the trial court erred in unduly restricting his direct examination of two defense witnesses, thereby denying him the right to properly present his case.
The defense put on Shirley Levy, a religion teacher at Mount Carmel High School in New Orleans to testify as to the religious devotion of the defendant and his relationship with the students and faculty of Mount Carmel. When asked if she was aware of the defendant’s reputation for truthfulness, veracity, and/or moral character, she stated “everyone will vouch for that.” The State objected. The trial judge sustained the State’s objections and asked the witness: “The question is have you ever heard it discussed as to his reputation. Have you ever heard it discussed by anyone?” Ms. Levy responded, “No.” The trial judge did not permit any further explanation by the witness of her answer or qualifications stating:
THE COURT:
I’m not finding fault with you, ma’am. I’m just trying to make sure that evidence that is admitted is evidence that should be admitted, and you have testified that you have never heard his reputation discussed before ... And your answer was not “yes” or “no”, what your answer was that you think that everybody will vouch for him, but that’s not the question?
Following an exchange between counsel and the court, defense counsel asked, “Your honor, you’re saying that she can’t explain her answer?” The State objected and the court responded, “I’m saying that her answer is self-sufficient ...” and permitted no further questioning on the issue. Out of the presence of the jury, the defense counsel moved for mistrial, which was denied.
As to the second defense witness, Craig Dooley, appellant argues in his brief the trial judge erred in that he “... continually interrupted and subsequently restricted [the witness] from testifying regarding the poor reputation for truthfulness held by complainant/victims ...” Initially we note that contrary to appellant’s assertion, this particular-defense witness was allowed to testify regarding the two boys’ charac *166 ters. The following exchange occurred between defense counsel and the defense witness:
MR. USPRICH:
Q. Do you know the reputation of Jamie Lawler — not Jamie Lawler — no, Jamie Maiorana in the community? Have you ever heard his reputation discussed in the general community?
A. I’ve heard it’s not good.
Q. In what respect?
A. Minor ...
MR. HONIG:
Objection, your honor, to anything specific. He can go into the general reputation ...
* * # # ⅝
LSA-R.S. 15:479 provides as follows:
Character, whether good or bad, depends upon the general reputation that a man has among his neighbors, not upon what particular persons thing of him.
LSA-R.S. 15:480 provides:
Evidence of the good character of the accused is always admissible in his behalf, and must be considered in connection with and as a part of the whole testimony and due weight be given it, but it cannot destroy conclusive evidence of guilt; and such evidence must be restricted to showing character as to such moral qualities as have pertinence to the crime with which he is charged.
It appears that the initial questions directed toward Ms. Levy by defense counsel were designed to establish her position in the community to which the defendant belongs and to establish her relationship to the accused. As such, they were relevant and proper. However, once Ms. Levy established she was not aware of defendant’s reputation in the community, the trial judge was correct in restricting further testimony on that point. “A witness is not in a position to testify affirmatively to the reputation of the accused unless he has heard it discussed.” State v. George, 346 So.2d 694 (La.1977). Any further testimony would have been irrelevant and was properly restricted. State v. George, supra, and LSA-R.S. 15:275.
As regards the testimony of the second defense witness, Craig Dooley, we find no error. Appellant contends the trial court erred in restricting testimony concerning the instant two boys’ alleged involvement in minor criminal offenses. The evidence the defense sought to elicit was not proper character evidence. LSA-R.S. 15:491 provides that when general credibility is attacked, the inquiry must be limited to general reputation, and cannot go into particular acts, vices or courses of conduct.
While defense counsel was within his bounds in asking Dooley if Dooley was familiar with the reputation in the community of the two boys accusing the defendant, defense counsel was clearly outside permissible bounds in asking Dooley specific questions concerning the two boys’ particular acts. We therefore find no error in the restrictions on further testimony imposed by the trial judge concerning this matter.
Assignment 3 lacks merit.
The conviction and sentence are affirmed.
AFFIRMED.

. Assignment of Error No. 5 was not briefed nor argued, and is deemed abandoned. Uniform Rules-Courts of Appeal, Rule 2-12.4.

. Prieur establishes safeguards, such as advance notice, the State must observe when it intends to offer evidence at trial of other criminal offenses under LSA-R.S. 15:445 and 15:446.